UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODERICK SIMS, ) | |
| ) | |
| Plaintiff, ) | Case No. 12-cv-09398 |
| v. ) | |
| ) | Judge John W. Darrah |
| TRINITY SERVICES, INC.; ) | |
| ELLIS CRAFT; ERICA POZZIN; ) | |
| STEPHANIE PERKINS; and ) | |
| JENNIFER HODGES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roderick Sims, proceeding *pro se*, filed suit against Defendants Trinity Services, Inc. ("Trinity"); Ellis Craft; Erica Pozzin; Stephanie Perkins; and Jennifer Hodges (the "Individual Defendants"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Counts I and II, respectively); sexual harassment in violation of 42 U.S.C. § 2000e *et seq*. (Count III); age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq*. (Count IV); discrimination in job promotion (Count V); retaliation (Count VI); and intentional infliction of emotional distress (Count VII).

On June 26, 2013, this Court granted Defendants' Motion to Dismiss in part and dismissed the Individual Defendants as to all Counts. The Court denied the Motion to Dismiss with respect to Counts I through V against Trinity. Sims was granted leave to amend his claims within thirty days but failed to do so. Trinity has now moved for summary judgment on the remaining Counts I through V, and Sims has failed to file a response. For the

reasons set forth below, Trinity's Motion [39] is granted.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment." Local Rule 56.2 requires "[a]ny party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment' in the form indicated below." N.D. Ill. L.R. 56.2. The Notice "explains the nature of a summary judgment motion and tells the *pro se* litigant what she must do to prevent summary judgment." *Id.*

District courts must liberally construe the pleadings of *pro se* litigants. *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). This liberal construction requirement "give[s] a *pro se* plaintiff a break" when his or her pleadings fail on a technicality but are otherwise understandable. *Id.* However, *pro se* litigants "are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662

F.3d 880, 886–87 (7th Cir. 2011). Indeed, district courts may "rigorously enforce" the requirements of Local Rule 56.1. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 853 (N.D. Ill. 2013).

A litigant's failure to respond to a Rule 56.1 statement means those uncontroverted statements are deemed admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). However, the Seventh Circuit has stated, "a nonmovant's . . . failure to comply with Local Rule 56.1, does not . . . automatically result in judgment for the movant." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (citations omitted). Rather, the movant must still bear the burden of persuading the court that it is entitled to judgment as a matter of law. *Id.*

Sims has failed to comply with Rule 56.1(b)(3) because he did not file a response to Trinity's Rule 56.1 statement. Trinity served Sims with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," (*see* Docket No. 43), together with its Motion for Summary Judgment. Sims was thus put on notice of Trinity's Motion for Summary Judgment; in fact, he asked for an extension of time to respond, which this Court granted on March 20, 2014. Despite receiving an extension of time, Sims did not file a response brief or Rue 56.1(b)(3) statement opposing Trinity's Motion. Accordingly, Trinity's uncontroverted statements are admitted as true, and Trinity bears the burden of persuasion that it is entitled to judgment as a matter of law.

## BACKGROUND

The following facts are taken from the Rule 56.1 statement of undisputed facts filed by Trinity (referred to herein as "SMF"). Sims is an African-American man and a resident of Chicago. (SMF ¶ 1.) At the time his employment was terminated, Sims was forty-four-years old. (*Id.*) Trinity is an Illinois non-profit organization that serves the physically and mentally

3

disabled. (*Id.* ¶ 2.) This Court has federal jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C. § 1391(b). (*Id.* ¶¶ 3-4.)

Sims worked as an Independent Living Counselor ("ILC") for Trinity from November 29, 2011 until he was terminated on May 9, 2012. (*Id.* ¶ 5.) Sims was initially assigned to a house at 6244 North Sacramento in Chicago. (*Id.* ¶ 10.) Approximately two weeks after he was hired, Sims requested a transfer to another house because he was having problems getting along with other Trinity employees at the Sacramento house. (*Id.* ¶ 11.) Sims was reassigned to a house on 6215 North Mozart Street. (*Id.* ¶ 12.) At the time that Sims transferred, Jamie Meus was the house manager of the Mozart house. (*Id.* ¶ 13.) Sims never applied for any Trinity position other than the ILC position for which he was hired. (*Id.* ¶ 7.) When Sims was hired, there were no house manager positions open. (*Id.* ¶ 8.)

*Sims's Discrimination and Harassment Claims*

In his Complaint, Sims claims that he suffered race discrimination, age discrimination and sexual harassment. When asked about his allegations of racial discrimination at his deposition, Sims testified that his supervisor, Jennifer Hodges, made the following comments to him: "If you don't do this, you'll be taken off the schedule to work"; "You cannot leave because I don't have coverage"; "You better . . ."; and "Do you hear me?" (Trinity's SMF ¶ 28.) When asked about age-based comments, Sims testified in his deposition that co-worker Giovany Rouge commented that Sims's teeth were so perfect and said, "When I get to be your age I'm going to need to take Viagra." (Trinity's SMF ¶ 56.) Sims further testified that co-worker Yoshio Trinidad said that Sims's teeth were fake and phony. (*Id.*) Sims claimed that he brought these comments to the attention of two supervisors, Ellis Craft and Meus, but he did not remember the

4

time or date. (*Id.* ¶ 57.) Both Craft and Meus submitted declarations denying that Sims informed them of the alleged harassment. (*Id.*)

In his deposition, Sims also testified that he was sexually harassed by two co-workers, Adrian Wechta and Trinidad. (*Id.* ¶ 29.) Neither Wechta nor Trinidad had the authority to hire, fire, transfer, discipline or promote Sims. (*Id.* ¶¶ 31, 42.) Sims claimed that Wechta touched him on his stomach and back on two separate occasions. (*Id.* ¶ 33.) Sims told Wechta to "stop touching me," and Wechta then stopped touching him. (*Id.* ¶ 34.) Sims claimed that three people witnessed Wechta touch Sims: Tiffany Henry, Qianna Oliver, and Taysha Johnson. (*Id.* ¶ 37.) Both Henry and Oliver have submitted declarations denying they saw Wechta touch or harass Sims in any fashion. (*Id.* ¶¶ 38-39.) Sims also claimed that he told Craft and Meus about the harassment he experienced at the hands of Wechta. Again, both supervisors have denied that they were informed of the harassment. (*Id.* ¶ 40.)

Sims also testified that Trinidad called the Mozart House and said he was Officer Fecku, F-e-c-k-u. (*Id.* ¶ 42.) Sims claimed to have a police report proving that Trinidad made the prank call, but he never provided the report to Meus after she asked to see it. (*Id.* ¶¶ 44-45.) Sims also testified that Trinidad texted a message to him that said "hello culo," meaning "hello ass." (*Id.* ¶ 46.) Sims sent this message to Meus via text message, but would not show Meus his phone when Meus asked him to do so. (*Id.* ¶¶ 48, 50.) Trinidad denied that he sent this text. (*Id.* ¶ 5.) Sims also claimed that Trinidad left a vulgar message on Sims's cellphone that said, "yeah, mother fucka, suck [my] dick," but that Sims inadvertently erased it. (*Id.* ¶ 51.) Sims never reported this message to any Trinity supervisor. (*Id.* ¶ 52.) Sims testified that Trinidad rubbed up against him three times in March 2012. (*Id.* ¶ 53.) Sims claimed that Henry saw Trinidad rub

up against Sims; however, Henry has also denied she saw this. (*Id.* ¶ 54.) Sims did not report this incident to any Trinity supervisor. (*Id.* ¶ 55.)

*Sims's Unauthorized Use of Trinity's Vans*

As a Trinity employee, Sims knew and understood that Trinity's policies prohibited the use of its vehicles for personal business, including taking unauthorized trips, doing personal errands, and making unauthorized stops. (*Id.* ¶¶ 20-21.) Specifically, Trinity's Transportation Policy states that: "The employee must observe and meet the following standards: 11. Use of Agency vehicles for personal business is not permitted." (*Id.* ¶ 22.) Likewise, Trinity's handbook lists "Unauthorized use of an agency vehicle, including taking unauthorized trips, doing personal errands, and making unauthorized stops" as a "willful act of behavior" that is "deemed severe enough to warrant immediate discharge." (*Id.* ¶ 25.) Sims acknowledged receiving Trinity's Transportation Policy and a variety of other policies on November 28, 2011. (*Id.* ¶ 23.) Sims acknowledged, with his signature, that "I have read and understand the 'Transportation and Supervision' policy and procedure. Additionally, I understand that failure to follow this procedure my (sic) result in disciplinary action up to and including termination." (*Id.* ¶ 24.)

On April 14, 2012, Sims was given permission to use a Trinity van to travel to Great America and pick up "free" tickets for Trinity individuals who lived at the Mozart house; however, Sims returned without any tickets. (*Id.* ¶¶ 62-63.) On approximately April 28, 2012, Pozzin and Meus were informed that the other ILCs at the Mozart house could not go grocery shopping because Sims had possession of the Trinity van. (*Id.* ¶ 64.) There was confusion as to whether Sims had permission to use the Trinity van on April 28, 2012; instead of disciplining

him, Meus spoke with Sims and reminded him that he was not to use Trinity vans without proper permission. (*Id.* ¶ 65.)

On May 7, 2012, Pozzin was told by one of her subordinate employees that Sims had driven the Trinity van without permission to a local hospital. (*Id.* ¶ 66.) After going to a Trinity training meeting and dropping a staff member off at the Mozart house, Sims took the Trinity van to go to Illinois Masonic Hospital to see his mother from approximately 7:00 to 9:00 that evening. (*Id.* ¶ 67.) After repeatedly calling Sims during the evening, Pozzin finally made contact with Sims and asked him if he had possession of Trinity's van. (*Id.* ¶ 68.) Instead of answering Pozzin's question, Sims began to criticize his need to attend training, Trinity's lack of understanding for his personal situation, and Pozzin's persistence in knowing his whereabouts. (*Id.* ¶ 69.) Sims then admitted to taking the van with no remorse for his actions. (*Id.*) Pozzin referred Sims to the page in the employee handbook that he received upon hire that states that taking a company vehicle without authorization was a terminable offense. (*Id.* ¶ 70.) Sims was belligerent, rude and aggressive during the conversation, told Pozzin that she was "never to bother him with a frivolous conversation," and hung up. (*Id.* ¶¶ 70-71.)

Sims eventually returned the Trinity van around 11:30 p.m. on May 7, 2012, about thirty minutes after the start of his 11:00 p.m. shift at the Mozart house. (*Id.* ¶ 72.) During this time, Pozzin called Sims approximately every five minutes from 10:45-11:30 p.m. to check on his whereabouts. (*Id.*) On May 9, 2012, Pozzin spoke with Trinity's Executive Director, Art Dykstra, and they agreed that termination of Sims's employment was appropriate. (*Id.* ¶ 73.) Sims was fired that same day.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (quotation omitted). The adverse party must do so by "submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago*, 702 F.3d 916, 925 (7th Cir. 2012).

**ANALYSIS**

*Race-Based Discrimination & Harassment (Counts I, II, & V)*

In his Complaint, Sims set forth the following race-based claims under Title VII and Section 1981, as reflected in Counts I, II and V: (1) he was racially discriminated against and subjected to a hostile work environment; (2) he was fired due to his race; and (3) he was denied a promotion due to his race. Trinity argues that Sims's claims fail as a matter of law.

<u>Hostile Work Environment in Violation of Title VII (Count I)</u>

Title VII prohibits discrimination by employers based on an employee's race, including a prohibition against "creating a 'hostile or abusive work environment.'" *Alexander v. Casino*

8

*Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quotation omitted); *see also* 42 U.S.C. § 2000e(a)(1). To establish a hostile work environment under Title VII, a plaintiff must prove: "(1) that [his or] her work environment was both objectively and subjectively offensive; (2) that the harassment was based on [his or] her race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). When determining whether conduct is sufficiently severe or pervasive enough to be actionable, courts look at all of the circumstances, "including the frequency of the discriminatory conduct, how offensive a reasonable person would deem it to be, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013).

Sims testified that his supervisor, Hodges, made the following comments to him based on his race: "If you don't do this, you'll be taken off the schedule to work"; "You cannot leave because I don't have coverage"; "You better . . ."; and "Do you hear me?" (Trinity's SMF ¶ 28; Compl. ¶ 35.) However, there is no indication that Hodges made these comments based on Sims's race; rather, the purpose of Hodges's comments to Sims appears to be to secure Sims's work performance in order to carry on Trinity's business. No reasonable juror could find Hodges's comments to be objectively offensive or directed at Sims based on his race. Nor are Hodges's comments severe or pervasive enough to be actionable. Sims did not claim that he was the target of any racial slurs, racial epithets, or overtly race-related behavior. Sims has not established a *prima facie* hostile work environment under Title VII, and therefore, summary judgment is granted in favor of Trinity on Count I.

Discriminatory Termination in Violation of Section 1981 (Count II)

In Count II, Sims alleges that he was terminated based on his race in violation of Section 1981. A plaintiff proceeding under Section 1981 can establish discriminatory discharge by either the direct method or the indirect method of proof. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). To avoid summary judgment under the direct method, a plaintiff must "present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." *Id.* Circumstantial evidence must be sufficient to create "a convincing mosaic of discrimination." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

There is no direct evidence or circumstantial evidence that Trinity was motivated by discriminatory intent in firing Sims. There is nothing suspicious about the timing of Sims's termination on May 9, 2012: Sims was reminded on April 28, 2012 that he was not permitted to use Trinity vehicles without permission, and he was fired just two days after he took a Trinity vehicle without permission on May 7, 2012.

Sims cannot establish a *prima facie* case of discriminatory discharge under the indirect method either. Under the indirect method, a plaintiff must show that: "(1) he [or she] is a member of a protected class; (2) his [or her] job performance met his employer's legitimate expectations; (3) he [or she] suffered an adverse employment action; and (4) similarly situated persons outside the class received more favorable treatment." *Burnell*, 647 F.3d at 709. If the plaintiff fails to establish "each element of this *prima facie* case, summary judgment must be entered in favor of the defendant." *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006). If a plaintiff establishes a *prima facie* case, "the burden shifts to her employer to identify

a legitimate, nondiscriminatory reason for the termination." *Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013) (citation omitted). If the employer identifies a legitimate, nondiscriminatory reason for the termination, "the burden shifts back to the plaintiff to show that the reason offered was pretextual." *Id.*

Based on the record, Sims cannot show that he was meeting his employer's legitimate expectations. Sims used Trinity's van without permission and in violation of Trinity's employment policies, which were known to Sims and which he had been repeatedly reminded of by Trinity. Furthermore, by failing to respond to Trinity's Rule 56.1 Statement, Sims has admitted the truth of Trinity's factual statements about his termination. Sims cannot establish direct or indirect discrimination, and therefore, summary judgment is granted in favor of Trinity on Count II.

### Race-Based Denial of Promotion (Count V)

In Count V, Sims alleges that he was denied a promotion based on his race. Although he has not identified whether he is proceeding under Title VII or Section 1981, both laws permit Sims to establish discrimination under the direct or indirect methods of proof, discussed *supra*. *See McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (Title VII and Section 1981 employ "essentially identical" methods of proof and elements).

Here, there is no evidence of discrimination against Sims that would satisfy either the direct or indirect method of proof. Indeed, as conclusively established by Trinity's unconverted statement of facts, Sims never even applied for another position or promotion at Trinity after he was initially hired as an ILC. (SMF ¶¶ 5, 7.) Although Sims claimed that Craft told him he would be a good candidate for a house manager position, she did not have the authority to


11

promise him any promotions at Trinity; furthermore, her comments do not show discrimination by Trinity.  No reasonable jury could find discrimination for failure to promote when Sims did not even apply for a promotion in the six months that he worked for Trinity.  Consequently, summary judgment is granted in favor of Trinity on Count V.

*Sexual Harassment (Count III)*

To establish sexual harassment, a plaintiff must show that: "(1) [he or] she was subjected to unwelcome harassment, (2) the harassment was based on [his or] her sex, (3) the harassment was sufficiently severe or pervasive so as to alter the condition of [his or] her employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007) (citation omitted).  The Seventh Circuit has "on many occasions distinguished between harassing and merely objectionable conduct." *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004).  "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

For example, in *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463-64, the Seventh Circuit concluded that an objective person would not have found a work environment to be hostile or abusive where a plaintiff alleged that her supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer.  Likewise, in *Adusumilli*, 164 F.3d at 361, the Seventh Circuit found that there was no

harassment where the plaintiff alleged teasing, staring and attempts to make eye contact, and four isolated incidents where a co-worker briefly touched her arm, fingers, or buttocks.

As discussed in more detail above, in his deposition, Sims described some isolated incidents of touching by his co-worker Wechta, who stopped when Sims told him to. Sims also described some touching and inappropriate text and phone messages by his co-worker Trinidad. The only evidence of this conduct was provided by Sims in his deposition testimony. Furthermore, the supervisors who Sims claimed saw the touching denied that they saw this conduct. Sims's claims about sexual harassment do not constitute conduct that is sufficiently severe or pervasive to create an objectively hostile work environment. Even taking Sims's deposition testimony as true, those claims do not rise above the level of isolated incidents and simple teasing. Summary judgment in favor of Trinity is granted on Count III.

*Age Discrimination (Count IV)*

As with discrimination claims under Title VII and Section 1981, plaintiffs may establish age discrimination using the direct or indirect method of proof. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). There is no evidence of direct age discrimination by Trinity against Sims. Sims cannot establish age discrimination under the indirect method of proof either. As discussed above, there is no dispute that Sims was not meeting Trinity's legitimate expectations when he was fired for impermissibly using the Trinity van. Accordingly, Sims cannot establish the second element of the indirect method of proof.

Likewise, Sims has not identified any similarly situated persons that were treated better than he was to satisfy the fourth required element of the indirect method of proof. Furthermore, when Sims was asked via interrogatory to identify people "other than yourself" in their early

forties who have been shunned, treated very poorly, harassed and denied job promotions as alleged in paragraph twenty-six of his Complaint, he responded by answering, "Susan Blackburn, Karen Elkins and Tawio Jenkins." (Trinity's SMF ¶ 58.) At his deposition, however, Sims did not know the age of Blackburn, Elkins, or Jenkins or how any of them had been discriminated against on the basis of age. (*Id*. ¶¶ 59-61.) Sims cannot show that he was discriminated against on the basis of his age. Therefore, summary judgment is granted in favor of Trinity on Count IV.

## CONCLUSION

For the reasons set forth above, Trinity's Motion for Summary Judgment [39] is granted. Civil case is terminated.

Date: June 26, 2014

JOHN
United States District Court Judge